UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Case No. 5:25-CV-00047-BJB

HUTSON, INC.                                                    PLAINTIFFS
AND HUTSON, INC. OF MICHIGAN

V.

JOSHUA WAGGENER                                          DEFENDANT

---

AMENDED COMPLAINT
(Electronically Filed)

---

Come the Plaintiffs, Hutson, Inc., and Hutson, Inc. of Michigan, (hereinafter collectively referred to as "Hutson") by counsel, and for their Complaint against the Defendant, Joshua Waggener, state as follows:

PARTIES

1.      Plaintiff, Hutson, Inc., is a corporation organized under the laws of the Commonwealth of Kentucky, having its principal place of business located at 306 Andrus Drive, Murray, Kentucky 42071.  As such, Hutson is a citizen of the Commonwealth of Kentucky.

2.      Plaintiff, Hutson, Inc. of Michigan, is a corporation organized and existing under the laws of Michigan, with its principal place of business located at 1365 East Monroe Road, State Route 46, St. Louis, Michigan 48880. As such, Hutson, Inc. of Michigan is a citizen of the State of Michigan.

3.      Defendant, Joshua Waggener ("Waggener") resides at 2323 Nakard Street, Apartment 2801, Dallas Texas 75201-4481.  As such, Waggener is a citizen of the State of Texas.  He can be served at this address.

4.    Hutson, Inc. and Hutson, Inc. of Michigan are wholly-owned subsidiaries of Global Ag Source, Inc., a Kentucky Corporation ("Global Ag").

## JURISDICTION AND VENUE

5.    This Court has personal jurisdiction over Waggener under Ky. Rev. Stat. Ann. §454.210(2)(a)(1) because he transacted business in the Commonwealth of Kentucky and was an officer and employee of a corporation, by either title or contract, certified in Kentucky. In addition, Waggener consented to jurisdiction within this district pursuant to the terms and conditions of his Employment Agreement.

6.    The Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. §1332 because Hutson, Inc., Hutson, Inc. of Michigan and Waggener are citizens of different states of the United States, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7.    Venue is proper in this district under 28 U.S.C. §1391(b)(2), based upon the fact that the acts and occurrences took place, in part, in this judicial district. In addition, Waggener consented to venue within this district pursuant to the terms and conditions of his Employment Agreement.

## GENERAL ALLEGATIONS

8.    Waggener entered into an Employment Agreement with Hutson as of January 1, 2023 ("Waggener Employment Agreement"), pursuant to which he was to serve as Hutson's Chief Executive Officer, or in such position as the Board of Directors ("Board") shall in its sole discretion designate.[1]

---

[1] *See* Waggener Employment Agreement attached hereto and incorporated herein as "Exhibit 1", with certain monetary provisions redacted.

9.      Pursuant to the Waggener Employment Agreement, Waggener agreed, among other obligations, "to be a loyal employee of the Company, and shall at all times faithfully and to the best of Employee's abilities and experience, and in accordance with the reasonable standards and ethics of the business in which Company is engaged, perform all duties that reasonably may be required of Employee by this Agreement, Company's policies and procedures, and the reasonable directives of the Board subject to the terms of" the Waggener Employment Agreement.

10.      Waggener further agreed in the Waggener Employment Agreement that he "shall not engage in any activity that conflicts with, appears to conflict with, or is detrimental or appears to be detrimental to Company's best interests, as determined by Company in its sole discretion."

11.      Also effective as of January 1, 2023, Hutson and Waggener entered into an Agreement to Protect Confidential Information, Assign Inventions and Prevent Unfair Competition and Solicitation ("Waggener Non-Compete"), pursuant to which, among other obligations, Waggener agreed to protect Hutson's Confidential Information, as defined in the Waggener Non-Compete, and further agreed not to compete with Hutson on the terms set out in the Waggener Non-Compete.[2]

12.      Waggener voluntarily resigned his position with Hutson as of July 14, 2024, without Good Reason, as defined in the Waggener Employment Agreement.

13.      In the lead up to Waggener's July 14, 2024 resignation, the Board began to question whether Waggener was loyally and faithfully performing the duties of his position

---

[2] *See* Waggener Non-Compete, attached hereto and incorporated herein as "Exhibit 2".

as required by the Waggener Employment Agreement, so much so that the Board was assessing its options to terminate Waggener's employment at the time of his resignation.

14.    However, just days before the Board could terminate Waggener's employment, Waggener approached the Board and advised the ownership group he was suffering from certain physical ailments which would largely restrict him from working as a Chief Executive Officer of Hutson or any business entity.

15.    Waggener voluntarily resigned from his employment with Hutson, with Hutson and Waggener entering into a Release on July 14, 2024 to memorialize the terms of Waggener's separation from Hutson ("Waggener Separation Agreement").[3]

16.    Pursuant to the terms and conditions of the Waggener Separation Agreement (which was negotiated in reliance on Waggener's representations regarding his retirement from day-to-day employment because of certain physical ailments), Hutson was to pay Waggener $400,000.00, consisting of a $333,333.33 separation payment, a $50,000.00 consideration payment, and the payment of his health insurance premiums for three (3) months (collectively, the "Waggener Separation Payment").

17.    On the exact same day as Waggener received the Waggener Separation Payment, he announced via social media, including on the LinkedIn app, that he had accepted a job as the President and Chief Executive Officer of W&B Service Company.

18.    W&B Service Company's website describes the business as a Transport Refrigeration and Semi-Trailer dealer that maintains a large inventory of refrigeration units, trailers, and supporting parts.  Also, according to W&B Service Company's website,

---

[3] *See* Waggener Separation Agreement, attached hereto and incorporated herein as "Exhibit 3".

with twenty locations and more than one-hundred mobile service trucks, W&B Service Company is the nation's leading Transport Refrigeration and Semi-Trailer dealer.

19.    In light of Waggener's dishonesty regarding the stated reason for his resignation, Hutson decided to conduct an investigation into his pre-resignation conduct.

20.    One of the first concerning items Hutson identified was an unauthorized reimbursement Waggener received for a $30,000.00 alleged charitable donation he personally made to a charity and then sought subsequent reimbursement from Hutson.

21.    Waggener's reimbursement for the alleged $30,000.00 charitable donation was made through a series of three (3) separate payments in the amounts of $7,500.00, $8,400.00 and $14,100.00.

22.    Hutson ultimately learned the $30,000.00 "donation" that Waggener improperly reimbursed through Hutson, via a series of three (3) separate reimbursements, was actually for a collection of bourbon, a "Churchill Downs Experience" and a "Kentucky Derby Trip." Waggener knew this type of spending was not authorized, especially during the subject time period when Hutson was facing extremely difficult market conditions and spending/cost cutting initiatives were being discussed by Hutson.

23.    In light of the alarming facts Hutson discovered, Hutson continued to investigate Waggener's handling of financial matters for Hutson prior to his resignation. As a result of this investigation, Hutson has identified several company vehicles which were stolen from Hutson along with an unauthorized discretionary bonus program Waggener created and pursuant to which significant sums of money have been stolen from Hutson (the "Unauthorized Discretionary Bonus Program").

24.    Regarding the aforementioned vehicles, Waggener knowingly allowed a certain former Hutson employee ("Hutson Employee No. 2") to purchase, for $1.00 of total consideration, a 2022 Infiniti QX 60 (Autographs Trim) with approximately 38,189 miles then valued at approximately $36,281.00 to $40,170.00 according to Kelly Blue Book which was a part of Hutson's corporate fleet of vehicles. This transaction was never authorized by or reported to Hutson by Waggener and instead was intentionally concealed.

25.    Waggener also knowingly allowed a certain former Hutson employee ("Hutson Employee No. 4") to purchase, for $1.00 of total consideration, a 2018 Ford F-150 4x4 Lariat SuperCrew with 144,062 miles then valued at approximately $15,842.00 - $20,081.00 according to Kelly Blue Book which was a part of Hutson's corporate fleet of vehicles. This transaction was never authorized by or reported to Hutson by Waggener and, instead, was intentionally concealed.

26.    In connection with Waggener's departure from Hutson's employment, Waggener also knowingly stole and converted, by paying only $1.00 of total consideration, a 2021 Ford F-150 4x4 Lariat SuperCrew with 113,866 miles then valued at approximately $26,069.00 - $30,488.00 according to Kelly Blue Book which was part of Hutson's corporate fleet of vehicles. This transaction was never authorized by or reported to Hutson by Waggener and, instead, was intentionally concealed.

27.    Hutson's investigation is ongoing, and additional unauthorized and intentionally concealed vehicle transfers by Waggener are anticipated.

28.    Just as with the theft/conversion of the company vehicles, the Board was not aware of the aforementioned Unauthorized Discretionary Bonus Program pursuant to

which Waggener personally paid himself an unauthorized bonus and pursuant to which he paid several then Hutson employees significant sums of money which were not authorized by the Board.

29.    Hutson's investigation to date shows a $106,906.16 bonus (date paid 11/28/22) received by Waggener, pursuant to the Unauthorized Discretionary Bonus Program, which was not authorized or approved in any manner by the Board.  Waggener took this unauthorized bonus less than one week after paying a certain then accounting executive at Hutson a total of $178,760.48 in bonuses which were also not authorized by the Board (*see* $168,000.00 bonus paid on 11/23/22 to Hutson Employee No. 1 as referenced below along with the $10,760.48 bonus paid two days later on 11/25/22 to Hutson Employee No. 1 also as referenced below).

30.    To date, Hutson is aware of the following improper bonuses Waggener awarded and otherwise promised to pay to various Hutson employees within the 2022-2024 time frame (investigation into earlier in time paid bonuses in still underway) without any authorization or approval by the Board to proceed in such a manner:

| Hutson Employee | Date Paid | Amount |
|---|---|---|
| Hutson Employee No. 1 | 01/21/22 | $15,000.00 |
| Hutson Employee No. 1 | 04/29/22 | $10,760.48 |
| Hutson Employee No. 1 | 07/08/22 | $10,082.90 |
| Hutson Employee No. 1 | 09/30/22 | $7,500.00 |
| Hutson Employee No. 1 | 11/23/22 | $168,000.00 |
| Hutson Employee No. 1 | 11/25/22 | $10,760.48 |
| Hutson Employee No. 1 | 01/05/24 | $48,000.00 |
| Hutson Employee No. 1 | 07/05/24 | $13,445.15 |
| | | |
| Hutson Employee No. 2 | 11/25/22 | $7,000.81 |
| Hutson Employee No. 2 | 08/18/23 | $20,656.22 |
| Hutson Employee No. 2 | 12/29/23 | $48,000.00 |

| Hutson Employee No. 3 | 03/10/23 | $16,847.91 |
|---|---|---|
| Hutson Employee No. 3 | 12/29/23 | $48,000.00 |
| | | |
| Hutson Employee No. 4 | 02/02/24 | $52,000.00 |
| | | |
| Hutson Employee No. 5 | 03/08/24 | $37,992.50 |
| | | |
| Hutson Employee No. 6 | 12/23/22 | $15,000.00 |
| Hutson Employee No. 6 | 03/10/23 | $16,847.91 |
| | | |
| Hutson Employee No. 7 | 11/25/22 | $10,760.48 |
| Hutson Employee No. 7 | 03/10/23 | $22,781.15 |
| | | |
| Hutson Employee No. 8 | 03/15/24 | $22,000.00 |
| | | |
| | | **Total USD $601,435.99** |

31.    In addition to the unauthorized taking of money from Hutson via the Unauthorized Discretionary Bonus Program, Waggener improperly grossed-up his, along with Hutson Employee No. 1's and Hutson Employee No. 2's, one-time deal bonuses awarded to them by the Board in connection with the acquisition of dealerships which led to the creation of Hutson, Inc. of Michigan, so they would receive in after-tax cash the gross amount of the bonus the Board actually awarded to them. In other words, Waggener took a $106,906.16 bonus instead of the actual $75,000.00 bonus he was awarded in connection with the acquisitions which initially created Hutson, Inc. of Michigan.

32.    Similarly, Hutson Employee No. 1 was paid a $70,179.34 bonus instead of the actual $40,000.00 bonus awarded.  Hutson Employee No. 2 was paid a $65,856.83 bonus instead of the actual $40,000.00 bonus awarded.

33.    Other Hutson employees who worked on the Michigan acquisition and who were awarded bonuses did not receive the grossed-up bonuses Hutson Employee No. 1, Hutson Employee No. 2 and Waggener received.

34.    In December of 2021, allegations were made against Waggener concerning certain kickbacks he was alleged to have received as well as Waggener allegedly selling a Hutson owned John Deere Gator utility vehicle to a Hutson customer with the Hutson customer paying Waggener personally for the Gator instead of Hutson. Waggener offered certain excuses at the time regarding why the subject conversion/theft did not occur.

35.    In connection with the ongoing investigation regarding the issues made subject of this Complaint, Hutson re-examined the excuse Waggener previously provided regarding the Gator theft/conversion issues.  Hutson now believes Waggener did, in fact, convert a Hutson owned Gator for Waggener to subsequently sell to a Hutson customer with Waggener being paid personally for the subject transaction.

36.    Hutson has also now learned that in the year following the initial theft / conversion allegations from December 2021, Waggener paid a total of $222,103.86 in bonuses pursuant to the Unauthorized Discretionary Bonus Program to a certain individual formerly within Hutson's organization who was previously made aware of the issues involving Waggener from December of 2021.

37.    Hutson also believes Waggener engaged in other business ventures which were not authorized by or known to the Board, all in violation of the terms and conditions of the Waggener Employment Agreement as well as Waggener's fiduciary duties and other legal duties.

38.    Indeed, Waggener bragged to one Hutson employee that he made more money from consulting and speaking engagements he was simultaneously performing for other employer(s) than what he made working for Hutson.

39.     It is also believed Waggener worked against Hutson's interests in negotiating the terms of a certain former Hutson executive's departure from the business with Waggener even misrepresenting certain positions during the negotiation as positions being taken by the former employee's legal counsel when such comments were in fact not coming from a lawyer as misrepresented by Waggener.

40.     Had Waggener reported the Unauthorized Discretionary Bonus Program to the Board, which he had fiduciary duties and other legal duties to do, then beginning in at least calendar year 2022 (if not earlier), neither Waggener, Hutson Employee No. 1 or Hutson Employee No. 2 would have been paid any form of an annual performance bonus. Such bonuses were paid without the Board having the benefit of knowing about additional compensation Waggener was paying to himself and others pursuant to the Unauthorized Discretionary Bonus Program.

41.     Waggener received annual bonuses during the 2022, 2023 and 2024 calendar years.  None of those bonuses would have been paid to Waggener had he been truthful and reported to the Board the Unauthorized Discretionary Bonus he improperly received (including his role in administering and overseeing the Unauthorized Discretionary Bonus Program), his other improper conduct as detailed throughout this Complaint, and the fact that he was engaged in other forms of employment while also allegedly working solely for the benefit of Hutson in violation of contractual, fiduciary and other legal duties he owed to Hutson.

42.     Hutson Employee No. 1 and Hutson Employee No. 2 also received annual bonuses during the 2022, 2023 and 2024 calendar years. None of those bonuses would

have been paid had Hutson had knowledge regarding the Unauthorized Discretionary Bonus Program.

43.    Waggener was a participant in certain Long-Term Incentive Plans / Stock Appreciation Rights Programs involving both Hutson and Hutson, Inc. of Michigan (collectively, the "LTIP Program"). Pursuant to the terms and conditions of the LTIP Program, Waggener would have forfeited his rights thereunder had his dishonest and fraudulent acts associated with the Unauthorized Discretionary Bonus Program and other matters as detailed in this Complaint been reported to the Board and his employment terminated for cause prior to the time he received payment pursuant to these programs. Waggener owed fiduciary duties and other legal duties to report his dishonest and fraudulent acts to the Board.

44.    Without knowing anything about the Unauthorized Discretionary Bonus Program, the stolen company vehicles, the other bad conduct as detailed herein, or the fact that Waggener was not working solely for Hutson, the Board proceeded to make payment to Waggener during the 2023 calendar year pursuant to the LTIP Program.  Such payment would not have been made by Hutson had Waggener been honest with the Board and reported the Unauthorized Discretionary Bonus Program and various of the other bad acts as detailed herein.

45.    Hutson was damaged by improperly paying Waggener during the 2023 calendar year pursuant to the LTIP Program.

46.    Upon information and belief, Waggener breached terms and conditions as contained respectively in the Waggener Employment Agreement and Waggener Non-Compete Agreement with Hutson, when he contacted a senior executive at a competing

John Deere dealer and indicated former Hutson employee, Mr. Chad Denson (then an employee at Hutson), would be interested in coming to work for said other distributor and leaving his employment with Hutson.

47.     Mr. Denson currently works for Sydenstricker Nobbe Partners.

48.     In connection with Waggener's resignation from Hutson employment, it appears he attempted to delete his company e-mail communications prior to returning his company issued laptop back to Hutson in violation of a variety of fiduciary duties and other legal duties owed to Hutson.   Waggener's intentional deletion of certain e-mail correspondence amounts to the destruction of Hutson property.

COUNT I<br>FRAUD AND INTENTIONAL MISREPRESENTATION

49.     Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 48 as if set forth herein.

50.     Waggener knowingly, or with reckless disregard, made false representations to the Board and other persons responsible for running the Hutson organization regarding the terms of Hutson Employee No. 2's departure from employment with Hutson, including, but not limited to, concealing the vehicle which was sold to Employee No. 2 for $1.00.  Hutson relied on these representations and was damaged as a result thereof.

51.     Waggener knowingly, or with reckless disregard, made false representations to the Board and other persons responsible for running Hutson's organization regarding the terms of Hutson Employee No. 4's departure from employment with Hutson, including, but not limited to, concealing the vehicle which was sold to

Employee No. 4 for $1.00.  Hutson relied on these representations and was damaged as a result thereof.

52.    Waggener knowingly, or with reckless disregard, made false representations to the Board and other persons responsible for running Hutson's organization regarding the terms of his departure from employment with Hutson, including, but not limited to, concealing the vehicle which he purchased for $1.00.  Hutson relied on these representations and was damaged as a result thereof.

53.    Waggener knowingly, or with reckless disregard, made false representations regarding the status of his health to the Board in order to increase the amount of his severance pay in connection with his departure from Hutson, only for Waggener to announce a new President and CEO position via LinkedIn the very same day as his severance payment was funded.  Hutson relied on these representations and was damaged as a result thereof.

54.    Waggener knowingly, or with reckless disregard, made false representations to Hutson accounting personnel regarding the nature of the $30,000.00 alleged charitable deduction which Waggener subsequently sought reimbursement for through three (3) separate transactions.  Hutson relied on these representations and was damaged as a result thereof.

55.    Waggener knowingly, or with reckless disregard, made false representations to the Board and various personnel within Hutson HR Department as well as Hutson Accounting Department regarding the Board's alleged approval of the Unauthorized Bonus Program.  Waggener even created forms he would sign allegedly

approving of certain of the bonuses paid pursuant to the Unauthorized Bonus Program. Hutson relied on these representations and was damaged as a result thereof.

56.    Waggener knowingly, or with reckless disregard, made false representations to the Board regarding his total compensation, omitting the fact he had received other compensation as a result of the Unauthorized Bonus Program and through other improper means.  Hutson relied on these representations and was damaged as a result thereof, including, but not limited to, by paying Waggener an annual performance bonus in 2022, 2023 and 2024 as well as by paying Waggener pursuant to the LTIP Program in 2023.

57.    Waggener knowingly, or with reckless disregard, made false representations to the Board regarding Hutson Employee No. 1's total compensation, omitting the fact that Hutson Employee No. 1 had received other compensation as a result of the Unauthorized Bonus Program.  Hutson relied on these representations and was damaged as a result thereof, including, but not limited to, by paying Hutson Employee No. 1 an annual performance bonus in 2022, 2023 and 2024 as well as by paying Hutson Employee No. 1 pursuant to the LTIP Program in 2023.

58.    Waggener knowingly, or with reckless disregard, made false representations to the Board regarding Hutson Employee No. 2's total compensation, omitting the fact that Hutson Employee No. 2 had received other compensation as a result of the Unauthorized Bonus Program. Hutson relied on these representations and was damaged as a result thereof, including, but not limited to, by paying Hutson Employee No. 2 an annual performance bonus in 2022, 2023 and 2024 as well as by paying Hutson Employee No. 2 pursuant to the LTIP Program in 2023.

59.     Waggener knowingly, or with reckless disregard, made false representations to personnel within the Hutson Accounting Department by submitting forms indicating the Board had approved "grossing-up" Waggener's, Hutson Employee No. 1's and Hutson Employee No. 2's bonuses which were paid in connection with a certain Michigan acquisition as referenced above in this Complaint. Hutson relied on these representations and was damaged as a result thereof.

60.     Waggener knowingly, or with reckless disregard, made false representations concerning the aforementioned John Deere Gator in order for Waggener to ultimately convert the subject Gator to his own use and then selling same to a Hutson customer whereby Waggener was paid directly for the subject Gator.  Hutson relied on these representations and was damaged as a result thereof.

COUNT II
BREACH OF CONTRACT

61.     Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 60 as if set forth herein.

62.     Pursuant to the terms and conditions of the Waggener Employment Agreement and by virtue of his position with Hutson, Waggener was a fiduciary of Hutson.

63.     Based on the terms of the Waggener Employment Agreement, Waggener had an obligation to be a loyal employee of Hutson, perform his duties faithfully in accordance with the reasonable standards and ethics of the business, and devote his working time and efforts to the performance of his duties for Hutson.

64.     Based on the terms of the Waggener Employment Agreement, Waggener also had an obligation not to engage in any activity that conflicts with, appears to conflict with, or is detrimental or appears to be detrimental to Hutson's best interests.

15

65.    Waggener breached his aforementioned contractual obligations by working for other employer(s) and/or engaging in various other business ventures during the same period of time he was contracted to utilize his sole best efforts to function as Hutson's President and CEO.

66.    Hutson was damaged as a result of Waggener breaching the aforementioned contractual obligations and not devoting his sole best efforts to running and managing Hutson's business.  Damages will be in an amount to be determined at trial.

67.    Pursuant to the terms and conditions of the Waggener Non-Compete, which also contains terms and conditions regarding anti-solicitation, Waggener was prohibited from working in any manner to direct Hutson personnel to a different employer.

68.    Waggener breached the terms of the Waggener Non-Compete when he contacted a senior executive at a competing John Deere dealer and indicated Mr. Denson would be interested in coming to work for said other distributor and leaving his employment with Hutson. Hutson was damaged as a result of Waggener's breach of the corresponding contractual terms.

69.    Pursuant to the terms and conditions of the Waggener Employment Agreement, only the Board was empowered to pay discretionary bonuses.

70.    Waggener breached the Waggener Employment Agreement when he paid certain bonuses to himself and others pursuant to the Unauthorized Discretionary Bonus Program.

71.    As a result of Waggener's breach of the Waggener Employment Agreement, Hutson has suffered damages in an amount to be proven at trial.

COUNT III
BREACH OF FIDUCIARY DUTIES

72.    Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 71 as if set forth herein.

73.    The Waggener Employment Agreement provides, in relevant part, as follows:

> *Employee agrees to be a loyal employee of the Company, and shall at all times faithfully and to the best of Employee's abilities and experience, and in accordance with the reasonable standards and ethics of the business in which Company is engaged, perform all duties that reasonably may be required of Employee by this Agreement, Company's policies and procedures, and the reasonable directives of the Board subject to the terms of this Agreement.*

> ***

> *The Board of Directors of Company's parent company, Global Ag Source, Inc., in the Board's sole discretion may authorize the Company to pay additional bonuses, though it is not required.*

74.    As an officer of Hutson and/or Hutson, Inc. of Michigan, Waggener owed fiduciary duties of care, loyalty and good faith to Hutson and its directors and owners. Waggener's fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of Hutson business, to discharge its actions in good faith, to act in the best interests of Hutson and its directors and owners, and to put the interests of Hutson before his own.

75.    Waggener breached his fiduciary duty of care by, among other things, failing to comply with Hutson policies and procedures.

76.    Waggener breached his fiduciary duty of loyalty and good faith by, among other things, intentionally violating the terms and conditions of certain of the agreements he entered into with Hutson by authorizing and paying certain bonuses pursuant to the

Unauthorized Discretionary Bonus Program to other employees and by paying himself pursuant to the Unauthorized Discretionary Bonus Program.

77.    Waggener breached his fiduciary duty of loyalty and good faith by, among other things, intentionally violating the terms and conditions of certain of the agreements he entered into with Hutson by accepting certain bonuses which were not authorized by the Board.

78.    Waggener breached his fiduciary duties owed to Hutson by selling a Gator utility vehicle "off the books" to one of Hutson's customers whereby Waggener received a personal check for the subject transaction thereby engaging in self-dealing.

79.    Waggener breached his fiduciary duties owed to Hutson by requesting and receiving reimbursement payments in connection with an improper and unauthorized charitable deduction thereby engaging in self-dealing.

80.    Waggener breached his fiduciary duties owed to Hutson by soliciting money from Hutson employees, whom he supervised.

81.    Waggener breached his fiduciary duties owed to Hutson by engaging in other forms of employment and not devoting his sole efforts to functioning as Hutson President and CEO.

82.    Waggener breached his fiduciary duties owed to Hutson by improperly authorizing the sale of two (2) company vehicles well below the fair market value at a sale price of $1.00 each to certain former employees of Hutson, whereby such vehicles were not included as part of any severance package authorized by the Board.

83.    Waggener breached his fiduciary duties owed to Hutson by improperly purchasing a company vehicle for himself well below the fair market value at a sale price

of $1.00, when such vehicle purchase was not included as part of any severance package authorized by the Board in regard to Waggener. Upon information and belief, Waggener breached his fiduciary duties owed to Hutson by threatening a former Hutson employee over reporting Waggener for, among other things, the theft of the subject Gator.

84.     Waggener breached his fiduciary duties owed to Hutson by attempting to delete his company e-mails on or shortly before his last day of employment with Hutson.

85.     As a direct and proximate result of the failures as detailed herein, and as a direct and proximate result of Waggener's breach of fiduciary duties, Hutson has been damaged in an amount of money to be proven at trial, including punitive damages.

COUNT IV
CONVERSION

86.     Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 85 as if set forth herein.

87.     Hutson leases a fleet of vehicles from a third-party fleet management company.

88.     From time to time, Hutson can purchase vehicles for a below market amount from the fleet management company.

89.     Waggener converted Hutson's contractual right to purchase vehicles at a below market valuation to Waggener's own benefit and to the benefit of Employee No. 2 and Employee No. 4 as identified above, respectively, in connection with the sale/purchase of the three (3) vehicles as detailed in this Complaint.

90.     The funds paid to Waggener and others pursuant to the Unauthorized Discretionary Bonus Program were the property of Hutson which had the legal right to possess the funds at the time of the conversion.

91.    By accepting payment of the discretionary bonuses paid pursuant to the Unauthorized Discretionary Bonus Program, Waggener and others who received such unauthorized bonuses exercised dominion over Hutson funds in a manner that denies Hutson rights to exclusively use and enjoy the company funds.

92.    Waggener intended to interfere with Hutson's possession of the company funds by making payments pursuant to the Unauthorized Discretionary Bonus Program.

93.    Waggener's actions were the cause of Hutson's loss of exclusive possession and use of the respective company vehicles as detailed herein as well as the funds tendered for payment pursuant to the Unauthorized Discretionary Bonus Program.

94.    Hutson has suffered damages as a result of the loss of its exclusive possession of the company vehicles and funds used to pay unauthorized discretionary bonuses.

95.    Waggener's conduct was oppressive, fraudulent and malicious, as those terms are used in KRS § 411.184. Hutson is entitled to actual and punitive damages due to Waggener's wrongful conversion.

## COUNT V
## UNJUST ENRICHMENT

96.    Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 95 as if set forth herein.

97.    Under the circumstances giving rise to this dispute, namely that Waggener received a bonus under the Unauthorized Discretionary Bonus Program, improperly grossed up one of the bonuses Hutson was actually aware of as being paid to Waggener, stole a Gator and then sold for personal gain, and the fact that Waggener received a vehicle for only $1.00 of consideration in connection with his departure, all without the

required approval of the Board, Waggener was unjustly enriched to Hutson's detriment for all of the corresponding amounts associated therewith.

98.    Waggener was also unjustly enriched by receiving bonuses during the 2022, 2023 and 2024 calendar years as well as an LTIP payout in 2023 when he was not working solely for Hutson as was Hutson's understanding. Waggener was unjustly enriched by being paid as if he was a full-time employee of Hutson, when, in fact, he was devoting his attention to a variety of other endeavors during the same time period.

COUNT VI
MISAPPROPRIATION OF HUTSON ASSETS

99.    Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 98 as if set forth herein.

100.    Waggener knowingly and intentionally misappropriated company assets by paying bonuses pursuant to the Unauthorized Discretionary Bonus Program which was not authorized by the Board.

101.    Waggener knowingly and intentionally misappropriated company assets by receiving payment pursuant to the Unauthorized Discretionary Bonus Program which was not authorized by the Board.

102.    Waggener knowingly and intentionally misappropriated company assets by grossing-up Hutson Employee No. 1's bonus in connection with the initial Michigan acquisition.

103.    Waggener knowingly and intentionally misappropriated company assets by grossing-up Hutson Employee No. 2's bonus in connection with the initial Michigan acquisition.

104.    Waggener knowingly and intentionally misappropriated company assets by grossing-up his bonus in connection with the initial Michigan acquisition.

105.    Waggener knowingly and intentionally misappropriated company assets when he sought reimbursement for an alleged charitable donation he paid via a personal check and the reimbursement was instead for a collection of bourbon, a "Churchill Downs Experience" and a "Kentucky Derby Trip."

106.    Waggener knowingly and intentionally misappropriated company assets when he accepted his annual bonus in 2022, 2023 and 2024 because he would not have otherwise been entitled to such bonuses had he not actively concealed his bad acts committed while working for Hutson and which were hidden from Hutson's owners and the Board.

107.    Waggener knowingly and intentionally misappropriated company assets when he accepted his LTIP payment in 2023 because he would not have otherwise been entitled to such bonuses had he not actively concealed his bad acts committed while working for Hutson and which were hidden from Hutson's owners and the Board.

108.    Waggener knowingly and intentionally misappropriated company assets when he usurped Hutson's opportunity to purchase, for $1.00, the vehicle he ultimately purchased for $1.00 (i.e., well below the corresponding market value).

109.    Waggener knowingly and intentionally misappropriated company assets when he usurped Hutson's opportunity to purchase, for $1.00, the vehicle Employee No. 2 ultimately purchased for $1.00 (i.e., well below the corresponding market value).

110.    Waggener knowingly and intentionally misappropriated company assets when he usurped Hutson's opportunity to purchase, for $1.00, the vehicle Employee No. 4 ultimately purchased for $1.00 (i.e., well below the corresponding market value).

111.    Waggener knowingly and intentionally misappropriated company assets when he converted, through fraudulent and/or false circumstances, a Gator to his own property and then sold the Gator to a Hutson customer keeping the money associated with the Gator sale.

COUNT VII
BREACH OF DUTY TO DISCLOSE

112.    Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 111 as if set forth herein.

113.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding payments made pursuant to the Unauthorized Discretionary Bonus Program.

114.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding the various bonuses which were improperly grossed-up.

115.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding the stolen/converted Gator.

116.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding the sale of various company vehicles for only $1.00 of consideration (whereby Hutson lost the difference between the fair market value of the subject vehicle and the $1.00 of consideration paid).

117.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding the alleged charitable donation he reimbursed at the expense of Hutson.

118.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding violations in the terms and conditions of the LTIP Program, including, but not limited to, violations involving Waggener, Hutson Employee No. 1 and Hutson Employee No. 2.

119.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding material violations in company policies and procedures which were designed to hide certain transactions from the knowledge of the Board and which would have resulted in Waggener, Hutson Employee No. 1 and Hutson Employee No. 2 not receiving any form of a performance bonus that was paid in 2022, 2023 or 2024.

120.    Waggener's fiduciary duties of care, loyalty and good faith to Hutson required him to disclose all pertinent information regarding his various other conflicting forms of employment he was engaged in while also functioning as Hutson's President and CEO.

121.    Waggener breached his duties by failing to disclose all of the information/events to Hutson as identified herein.

122.    As a result of the failures to disclose as set forth in this Count VII, Hutson has suffered damages to be proven at trial.

COUNT VIII
NEGLIGENCE

123.    Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 123 as if set forth herein.

124.    Waggener, as Hutson's President and CEO, owed various legal duties to Hutson and was employed in a management or officer level position.

125.    Waggener had a duty to perform his obligations in a reasonable, competent and professional manner.

126.    Pursuant to KRS § 271B.8-420, officers of a corporation must act with the same care as an ordinary prudent person in a like position would exercise under similar circumstances, inquiry into the business and affairs of the corporation, or into a particular action to be taken or decision to be made.

127.    Waggener failed to exercise ordinary care when he paid bonuses pursuant to the Unauthorized Discretionary Bonus Program which had not been properly authorized by the Board.

128.    Waggener failed to exercise ordinary care when certain bonuses were improperly "grossed-up" which had not been properly authorized by the Board.

129.    Waggener failed to exercise ordinary care when he allowed Hutson to transfer the contractual right to purchase three (3) certain vehicles for $1.00 of consideration which was well below the then corresponding fair market value for each such vehicle and were transactions which had not been approved by the Board.

130.    Waggener failed to exercise ordinary care when he sought reimbursement for a certain alleged charitable deduction which had not been properly authorized by the Board.

131.    Waggener's negligence was a substantial factor in causing Hutson to incur substantial direct damages, in an amount to be proven at trial.

COUNT IX
GROSS NEGLIGENCE

132.    Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 131 as if set forth herein.

133.    Waggener, as Hutson's President and CEO, owed various legal duties to Hutson and was employed in a management or officer level position.

134.    Waggener had a duty to perform his obligations in a reasonable, competent and professional manner.

135.    Pursuant to KRS § 271B.8-420, officers of a corporation must act with the same care as an ordinary prudent person in a like position would exercise under similar circumstances, inquiry into the business and affairs of the corporation, or into a particular action to be taken or decision to be made.

136.    Pursuant to KRS §271B.8-420, officers of a corporation are subject to monetary damages for injuries resulting from the officer's willful, wanton, and reckless conduct.

137.    Waggener willfully and recklessly ignored the obvious and foreseeable danger to Hutson of authorizing and approving discretionary bonuses pursuant to the Unauthorized Discretionary Bonus Program which was not authorized by the Board.

138.    Waggener willfully and recklessly ignored the obvious and foreseeable danger to Hutson of improperly "grossing-up" certain bonuses which was not authorized by the Board.

139.    Waggener willfully and recklessly ignored the obvious and foreseeable danger to Hutson associated with allowing Hutson to transfer the contractual right to purchase three (3) certain vehicles for $1.00 of consideration which was well below the then corresponding fair market value for each such vehicle and were transactions which had not been approved by the Board.

140.    Waggener willfully and recklessly ignored the obvious and foreseeable danger to Hutson associated with reimbursement for a certain alleged charitable deduction which had not been properly authorized by the Board.

141.    Waggener's gross negligence was a substantial factor in causing Hutson to incur substantial direct damages in an amount to be proven at trial.

COUNT X
NEGLIGENCE PER SE – THEFT BY UNLAWFUL TAKING / THEFT BY DECEPTION

142.    Hutson incorporates and realleges the allegations set forth above at paragraphs 1 through 141 as if set forth herein.

143.    Violation of a statute under Kentucky law gives rise to a private right of action where the injured is within the class of persons the statute intended to be protected. This is true even where the statute is penal in nature and provides no civil remedy.

144.    Waggener's conduct involving the Unauthorized Discretionary Bonus Program, grossing-up bonuses, the transfer of company vehicles to individuals and the unauthorized charitable reimbursements amount to negligence per se in that these actions violated Kentucky law constituting the crimes of theft by unlawful taking, pursuant to KRS § 514.030 and theft by deception, pursuant to KRS § 514.040, for which civil recovery may be had pursuant to KRS § 446.070.

145.    As a result of these violations, Hutson has suffered damages in an amount to be proven at trial.

REQUEST FOR RELIEF

WHEREFORE, Hutson respectfully requests the Court grant judgment against Waggener and in favor of Hutson as follows:

(a)    $601,435.99 for the bonuses Waggener improperly paid pursuant to the Unauthorized Discretionary Bonus Program, including such additional amounts as may be identified during the course of discovery;

(b)    $400,000.00 for the Waggener Separation Payment;

(c)    $106,906.16 for the bonus Waggener paid to himself pursuant to the Unauthorized Discretionary Bonus Program;

(d)    $30,000.00 for the "donation" Waggener improperly reimbursed through Hutson, via a series of three (3) separate reimbursements and which was actually for a collection of bourbon, a "Churchill Downs Experience" and a "Kentucky Derby Trip";

(e)    $30,488.00 for the vehicle Waggener improperly acquired in connection with his departure from Hutson employment;

(f)    $40,170.00 for the vehicle Waggener improperly allowed Hutson Employee No. 2 to acquire for only $1.00;

(g)    $20,081.00 for the vehicle Waggener improperly allowed Hutson Employee No. 4 to acquire for only $1.00;

(h)    $31,906.16 for the amount of taxes added to the $75,000.00 gross bonus Waggener was supposed to receive in connection with the acquisition of the Michigan locations which initially created Hutson, Inc. of Michigan;

(i)      $30,179.34 for the amount of taxes added to the $40,000.00 gross bonus Hutson Employee No. 1 was supposed to receive in connection with the acquisition of the Michigan locations which initially created Hutson, Inc. of Michigan;

(j)      $25,856.83 for the amount of taxes added to the $40,000.00 gross bonus Hutson Employee No. 2 was supposed to receive in connection with the acquisition of the Michigan locations which initially created Hutson, Inc. of Michigan;

(k)      An amount to be determined at trial for the Gator that was stolen/converted by Waggener and then sold to a Hutson customer with Waggener keeping the money for selling the Gator;

(l)      An amount equal to the annual performance bonuses paid to Waggener during 2022, 2023 and 2024;

(m)      An amount equal to the LTIP payment received by Waggener during 2023;

(n)      An amount equal to the annual performance bonuses paid to Hutson Employee No. 1 during 2022, 2023 and 2024;

(o)      An amount equal to the LTIP payment received by Employee No. 1 during 2023;

(p)      An amount equal to the annual performance bonuses paid to Hutson Employee No. 2 during 2022, 2023 and 2024;

(q)      An amount equal to the LTIP payment received by Employee No. 2 during 2023;

(r)      Such other damages as are discovered during the course of discovery;

(s)      Punitive damages;

(t)      All pre-judgement and post-judgement interest;

(u)     Attorneys' fees, litigation expenses and court costs;

(v)     Any and all equitable relief to which Hutson may appear properly entitled;

and

(w)     Trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED, this the 17th day of April, 2025.

MILLER HAHN, PLLC

By: /s/ Ryan A. Hahn.
Bobby R. Miller, Jr., Esq.
Ryan A. Hahn, Esq.
2660 West Park Drive, Suite 2
Paducah, KY 42001
Telephone: (270) 554-0051
Facsimile: (866) 578-2230
Email: bmiller@millerlaw-firm.com
Email: rhahn@millerlaw-firm.com

*Attorneys for Plaintiffs, Hutson, Inc., and Hutson, Inc. of Michigan*