**AGREEMENT TO PROTECT CONFIDENTIAL INFORMATION, ASSIGN INVENTIONS AND PREVENT UNFAIR COMPETITION AND SOLICITATION**

This Agreement, sometimes referred to as the Restrictive Covenant Agreement, entered into as of January 1, 2023, is between Hutson, Inc., a Kentucky corporation ("Company"), and Joshua Waggener ("Employee").

**RECITALS**

WHEREAS, pursuant to an Employment Agreement of even date herewith entered into between Company and Employee, Company has hired Employee to perform certain agreed-upon tasks as part of his/her employment as Chief Executive Officer of the Company, which is a senior management position with the Company for which Employee receives significant compensation; and,

WHEREAS, as consideration for Company's employment of Employee to assist with services as directed by Company, Company has agreed in writing to employee and provide them with certain benefits from their employment that they do not have presently; and,

WHEREAS, prior to the Effective Date and during Employee's employment with Company, by virtue of Employee serving in a Senior Management Position with the Company, Employee will have access to Company's Confidential Information (which is defined below), including its trade secrets, contracts and other critical and valuable aspects of Company's business, including, but not limited to, its financial data, customer lists, marketing strategies, business practices and the application of Company's business model; and,

WHEREAS, Company's Confidential Information is unique and valuable to Company, and Company would suffer irreparable harm if Employee were to divulge such Confidential Information in competition with Company or use such knowledge, information, and business acumen in competition with Company.

NOW THEREFORE, in consideration of, ancillary to and in connection with entering into a separate written Employment Agreement (the "Employment Agreement") of even date herewith which provides Employee with significant benefits and protections, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed:

**AGREEMENT**

1. **General**.

    (a) **Definition of "Confidential Information."** "Confidential Information" means all nonpublic information (whether in paper or electronic form, or contained in Employee's memory, or otherwise stored or recorded) relating to or arising from Company's business, including without limitation, trade secrets used, developed or acquired by Company in connection with its business. Without limiting the generality of the foregoing, "Confidential Information" shall include all information concerning the manner and details of Company's operation, organization and management; financial information and/or documents and nonpublic policies, procedures and other printed, written or electronic material generated or used in connection with Company's business; Company's business plans and strategies; the identities of Company's customers and the specific individual customer representatives with whom Company works; the details of

Company's relationship with such customers and customer representatives; the identities of distributors, contractors and vendors utilized in Company's business; the details of Company's relationships with such distributors, contractors and vendors; the nature of fees and charges made to Company's customers; nonpublic forms, contracts, charts, diagrams and any other documents used in Company's business; all information concerning Company's employees, agents and contractors, including without limitation such persons' compensation, benefits, skills, abilities, experience, knowledge and shortcomings, if any; the nature and content of computer software used in Company's business, whether proprietary to Company or used by Company under license from a third party; and all other information concerning Company's concepts, prospects, customers, employees, agents, contractors, earnings, products, services, equipment, systems, and/or prospective and executed contracts and other business arrangements. "Confidential Information" does not include information that is in the public domain through no wrongful act on the part of the Employee.

**(b)** **Confidentiality**.  During the past years while Employee has been employed by the Company, and currently, Employee had, and still has, access to Company's Confidential Information as defined in Section 1(a). Accordingly, at all times during and after the conclusion of the Employment Term for whatever reason (*i.e.*, regardless of whether Employee or Company terminates Employee's employment, or whether Employee's employment ceases because of his Death or Disability as those terms are defined in the Parties' Employment Agreement of even date herewith), Employee shall not misappropriate, use or disclose to any third-party any Confidential Information for any reason other than for Employee to perform his job duties as intended within the scope of Employee's employment with Company. In the event that the Employee is required by law to disclose any Confidential Information (regardless of whether the Employee is Company's employee at the time of the disclosure or not), Employee agrees to give Company prompt advance written notice thereof, to the greatest extent possible, and to provide Company, if requested, with reasonable assistance in obtaining an order to protect the Confidential Information from public disclosure. Upon termination of the Employee's employment for any reason, or at any other time upon Company's request, the Employee shall immediately return to Company all documents, forms, blueprints, designs, policies, memoranda, or other data (and copies hereof), in tangible, electronic, or intangible form, relating to Company's business or that of any of its Affiliates. Notwithstanding the foregoing, Confidential Information shall not include information that becomes publicly available other than through disclosure by the Employee in violation of this Restricted Covenant Agreement or any other applicable agreement.

**(c)** **Term of Obligation to Maintain Confidentiality**.  Employee's obligation to maintain confidentiality pursuant to Section 1 of this Agreement shall be perpetual**.**

**(d)** **Acknowledgements**.  Employee acknowledges that during his employment with Company, Employee will have access to Company's Confidential Information, all of which shall be made accessible to Employee only in strict confidence; that unauthorized disclosure of Confidential Information will damage Company's business and reputation; that any unauthorized release of any Confidential Information would be susceptible to immediate competitive application by Company's competitors; that Company's business is substantially dependent upon access to and the continuing secrecy of Confidential Information; that the Confidential Information is novel, unique and proprietary to Company and known only to certain of Company's key employees; that Company shall at all times retain ownership and control of all Confidential Information, regardless of any authorized disclosure of Confidential Information to Employee pursuant to the terms and conditions herein; and that the restrictions contained in this Restricted Covenant Agreement are reasonable and necessary for the protection of Company's legitimate business interests.

**(e)    Records Containing Confidential Information**. "Confidential Records" means all documents and other records, whether in paper, electronic or any other form, that contain or reflect any Confidential Information. All Confidential Records constitute Confidential Information regardless of whether a Confidential Record is marked "Confidential" or not. All Confidential Records prepared by or provided to Employee are and shall forever remain Company's proprietary and personal property. Except in connection with and in furtherance of Employee's work on Company's behalf or with Company's prior written consent, Employee shall not, at any time, directly or indirectly: (i) copy or use any Confidential Record for any purpose; or (ii) show, give, sell, disclose or otherwise communicate any Confidential Record or the contents of any Confidential Record to any person or entity. Upon the termination of Employee's employment with Company, or upon Company's written request, Employee shall immediately deliver to Company or its designee or destroy (and shall not keep in Employee's possession or deliver to any other person or entity) all Confidential Records and deliver to Company or its designee all other Company property in Employee's possession or control. This Restricted Covenant Agreement shall not prohibit Employee from complying with any subpoena or court order, provided that Employee shall immediately provide a copy of the subpoena or court order to Company's President, it being the Parties' intention to give Company a fair opportunity to seek judicial intervention or take any other appropriate steps Company deems appropriate to prevent the unnecessary and/or improper use or disclosure of Confidential Information and Confidential Records, as determined by Company in its sole discretion.

**(f)    Third-Parties' Confidential Information**.  Employee acknowledges that Company may have received, and may during his employment receive, from third-parties confidential or proprietary information, and that Company must maintain the confidentiality of such information and use it only for authorized purposes. Employee shall not use or disclose any such information except as authorized by Company or the third party to whom the information belongs.

**2.    Unfair Competition; Non-Solicitation; Non-Disparagement**.

**(a)    Unfair Competition Prohibited.**  Employee shall not, except on behalf of Company and its Affiliates during the Employee's employment for the Company and its Affiliates and for twenty-four (24) months following the termination of Employee's employment with Company and its Affiliates ("Restricted Period"), directly or indirectly, (i) own, manage, operate, join, control or participate in the ownership, management, operation or control of, or be connected as an officer, director, employee, stockholder, partner, advisor, consultant or otherwise with, or provide any financing or lease any assets to, any entity that engages in or intends to engage in any Competing Business (ii) solicit, employ, hire, retain as a consultant, interfere with or attempt to entice away from Company or any of its Affiliates (as hereinafter defined), any Protected Employee (as hereinafter defined), or (iii) solicit, interfere with or attempt to entice away from Company or any of its Affiliates, any Person which is, or has been during the twenty-four (24) month period preceding the date of such solicitation, interference or attempt to entice, a customer of Company or any of its Affiliates, or (iv) solicit, interfere with or attempt to entice away from Company or any of its Affiliates a potential customer of Company or any of its Affiliates that Company or any of its Affiliates have spent time or resources actively pursuing at any time during Restricted Period or (v) perform services or provide products for any customer or potential customer described in subsections (iii) or (iv) of this Section 2(a) that are the same as or similar to services or products provided by Company or any of its Affiliates as defined in "Competing Business" below. Ownership of not more than 2.5% of the outstanding stock of any publicly traded company shall not be a violation of this Restricted Covenant Agreement so long as Employee is merely an investor and does not participate in the management of such company.

**(b)** **Definitions**. As used herein, "Affiliate" means, as to any Person, any Person directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with such Person; provided, the term "control," as used in this definition, shall mean with respect to any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity (whether through ownership of voting securities, by contract or otherwise); "Competing Business" shall mean any business or enterprise that exists or operates from or in either the United States or Canada (the "Geographical Area") that (i) engages in any business or enterprise that Company or any of its Affiliates engage in as shown on Company's website (www.Companyinc.com) any time before the conclusion of the Restricted Period; (ii) engages in any other activities that are otherwise competitive with the respective businesses of Company or its Affiliates any time before the conclusion of Restricted Period and (iii) engages in any business, enterprise, sales or service that Deere & Co. engage in on its website (www.deere.com); "Person" means an individual, any business entity, a partnership, a corporation, an association, a joint stock company, a limited liability company, a trust, a joint venture, an unincorporated organization and a governmental entity or any department, agency or political subdivision thereof; and "Protected Employee" means any employee of Company or any of its Affiliates, or any individual who was employed by Company or any of its Affiliates at any time within a 24 month time period preceding the solicitation, employment, hiring, retention as a consultant, interference with, or attempt to entice away at issue.

**(c)** From and after the Effective Date hereof, Employee shall not directly or indirectly, directly or through any other Person make any public or private statements (whether orally, in writing, via electronic transmission, or otherwise) without the written consent of Company, publish or communicate disparaging or derogatory statements or opinions about Company or its Affiliates, including, but not limited to, disparaging or derogatory statements or opinions about Company's ownership, management, products or services, to any third party; *provided, however*, that it shall not be a breach of this Section 2(c) for Employee to testify truthfully in any judicial or administrative proceeding or to make statements or allegations in legal filings or investigations that are based on Employee's reasonable belief and are not made in bad faith.

**3.** **Inventions**.

**(a)** **Definition of Company Inventions**. "Company Inventions" means all ideas, processes, trademarks and service marks, inventions, discoveries, and improvements to any of the foregoing, that Employee learns of, conceives, develops or creates alone or with others during Employee's employment with Company (whether or not conceived, developed or created during Employee's regular working hours per the Employment Agreement) that directly or indirectly arise from or relate to: (i) Company's business, products or services; or (ii) any Affiliates' business, products or services or (iii) work performed for Company by Employee or any other Company employee, agent or contractor; or (iv) the use of Company's property; or (v) access to Company's Confidential Information and/or Confidential Records.

**(b)** **Disclosure of Company Inventions**. Upon Company's request, Employee shall promptly disclose to Company or its designee, in a manner specified by Company in its sole discretion, all Company Inventions of which Employee has knowledge, irrespective of whether that knowledge is complete or incomplete, and irrespective of whether any such Company Invention or any aspect thereof has been described in or committed to writing, in whole or part, by any other person.

**(c)** **Assignment**. Employee hereby assigns to Company, and Company agrees to accept, Employee's entire right, title and interest in all Company Inventions, which shall be the sole and exclusive property of Company whether or not subject to patent, copyright, trademark or trade secret protection. Employee also acknowledges that all original works of authorship that are made by Employee (solely or jointly with others), within the scope of Employee's employment by Company, and that are protectable by copyright, are "works made for hire," as that term is defined in the United States Copyright Act (17 U.S.C. §§ 101, et seq.). To the extent that any such works, by operation of law, cannot be "works made for hire," Employee hereby assigns to Company all right, title, and interest in and to such works and to any related copyrights.

**(d)** **Additional Instruments**. Employee shall promptly execute, acknowledge and deliver to Company all additional instruments or documents deemed at any time by Company in its sole discretion to be necessary to carry out the intentions of this Section 3 and its subparts. If Company is unable, after reasonable effort, to secure Employee's signature on any document needed to apply for or prosecute any patent, copyright, or other right or protection relating to any Company Inventions, Employee hereby designates and appoints Company and its duly authorized officers and agents of Employee's agent and attorney-in-fact, to act for and on Employee's behalf to execute, verify and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents, copyrights and other rights and protection thereon with the same legal force and effect as if executed by him. Such appointment shall be irrevocable and coupled with an interest in favor of Company.

**4.** **Survival**. Employee's obligations in Section 1, Section 2 and Section 3 above shall survive the termination of Employee's employment with Company regardless of the circumstances under which the termination occurred, whether or not such termination is claimed or found to be a breach of any contract or of any other covenant between the Parties.

**5.** **Remedies**. Employee acknowledges that if Employee breaches any obligation under this Restricted Covenant Agreement, Company will suffer immediate and irreparable harm and damage for which money alone cannot fully compensate Company. Employee therefore agrees that upon such breach or threatened breach of any obligation under this Restricted Covenant Agreement, Company shall be entitled to a temporary restraining order, preliminary injunction, permanent injunction or other injunctive relief, without posting any bond or other security, compelling Employee to comply with any or all such provisions. This paragraph shall not be construed as an election of any remedy, or as a waiver of any right available to Company under this Restricted Covenant Agreement or the law, including the right to seek damages or other remedies at law or equity from Employee for a breach of any provision of this Restricted Covenant Agreement, nor shall this paragraph be construed to limit the rights and remedies available under applicable law for any violation of any provision of this Restricted Covenant Agreement.

**6.** **Other Agreements**. If Employee signed or signs any other agreement(s) relating to or arising from Employee's employment with Company, all provisions of such agreement(s) that do not directly conflict with a provision of this Restricted Covenant Agreement shall not be affected, modified or superseded by this Restricted Covenant Agreement, but rather shall remain fully enforceable according to their terms.

**7.** **Disclosure of this Restricted Covenant Agreement**. During the Restricted Period, Employee will notify any potential employers or business partners of the existence of this Restricted Covenant Agreement.

**8.    Notification or Other Employment**.  During the Restricted Period, Employee will notify Company of any other employment, consulting arrangement or other professional or business engagement with a Company, venture or entity which sells or develops services or products that compete with any Company line of business, such notice to be provided to Company in accordance with Section 15 below.

**9.    Non-Assistance**.  Employee agrees not to directly or indirectly assist any third person or Company in contesting or attacking Company's rights in and/or to any copyright, patent, trademark or other trade secret or confidential or proprietary information, except pursuant to subpoena or court order.

**10.    No Breach of Prior Obligations**.  Employee represents that performance of all of the terms of this Restricted Covenant Agreement and his employment by Company does not and will not breach any agreement not to compete or to keep in confidence confidential or proprietary information, knowledge or data, except otherwise disclosed in writing to Company prior to the Effective Date. Employee will not use or disclose to Company, or induce Company to use or disclose, any confidential or proprietary information or material belonging to any previous employer or others. Employee agrees not to enter into any agreement either written or oral in conflict with this Restricted Covenant Agreement. Employee further agrees to defend, indemnify (including reasonable attorneys' fees and expenses) and hold Company harmless with respect to any claim of loss attributable to or arising out of any violation by Employee of any provision of this paragraph.

**11.    Reasonable Limitations**.  Employee acknowledges that, given the nature of Employee's current employment with Company and of Company's business, the Confidential Information to which he will be exposed, and to protect Company's legitimate business interests, the covenants contained in this Restricted Covenant Agreement contain reasonable limitations as to time and scope of activity to be restrained, do not impose a greater restraint than is necessary to protect Company's and its Affiliates' legitimate business interests, and are supported by adequate consideration. In the event that the covenants contained in this Restricted Covenant Agreement are determined by any court of competent jurisdiction to be unenforceable for any reason, they shall be interpreted to extend only over the longest period of time for which they may be enforceable and/or to the maximum extent in all other aspects as to which they may be enforceable, all as determined by such court in such action.

**12.    Cooperation**.  During and after the Employment Term, Employee agrees to cooperate with Company in any internal investigation, any administrative, regulatory, or judicial proceeding or any dispute with a third-party concerning issues about which Employee has knowledge or that may relate to Employee or Employee's employment with Company. Employee's obligation to cooperate hereunder includes, without limitation, being available to Company upon reasonable notice for interviews and factual investigations, appearing in any forum at Company's request to give testimony (without requiring service of a subpoena or other legal process), volunteering to Company pertinent information, and turning over to Company all relevant documents which are or may come into Employee's possession. Company shall promptly reimburse Employee for the reasonable out of pocket expenses incurred by Employee in connection with such cooperation.

**13.    Immunity**.  An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and

(ii) solely for the purpose of reporting or investigating a suspected violation of law; or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

14. **Affiliates of Company**. All of Employee's representations, warranties and covenants in this Restricted Covenant Agreement and elsewhere herein shall benefit Company and the business of Company's Affiliates. All covenants herein shall be enforceable against Employee by Company or its Affiliates as third-party beneficiaries.

15. **Miscellaneous Provisions**.

(a) **Modification of this Restricted Covenant Agreement**. The Parties hereto acknowledge and agree that no one employed by or representing Company has any authority to make oral statements that modify, waive or discharge, in any manner, any provision of this Restricted Covenant Agreement. The Parties hereto further acknowledge and agree that no provision of this Restricted Covenant Agreement may be modified, waived or discharged unless agreed to in writing, and signed and executed by Employee and an authorized officer of Company (other than Employee). Employee acknowledges and agrees that in executing this Restricted Covenant Agreement he has not relied upon any prior representation or statement made by Company or its representatives, other than those specifically stated in this Restricted Covenant Agreement.

(b) **Notices**. All notices, demands or other communications to be given or delivered under or by reason of the provisions of this Restricted Covenant Agreement shall be in writing and shall be deemed to have been given or made (a) when delivered personally to the recipient, (b) when emailed to the recipient (with hard copy sent to the recipient by reputable overnight courier service (charges prepaid) that same day) if emailed before 5:00 p.m. prevailing Central Time on a business day, and otherwise on the next business day, or (c) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid), addressed as follows or to such other address or addresses of which the respective party shall have notified the other in writing:

    Company:    Hutson, Inc.
                           Attn: Bruce L. Hahn, Vice President
                           306 Andrus Drive
                           Murray, KY 42071
                           Facsimile: (270) 964-0013

    with a copy to:    Miller Hahn, PLLC
                           Attn: Bobby R. Miller, Jr., Esq.
                           2660 West Park Dr., Ste. 2
                           Paducah, KY 42001
                           Facsimile: (866) 578-2230
                           bmiller@millerlaw-firm.com

    Employee:    To the address listed on the signature page hereto.

**(c)     Waiver of Breach**.  The waiver by Company or Employee of a breach of any provision of this Restricted Covenant Agreement by the other Party shall not operate or be construed as a waiver of any other or subsequent breach by the other Party of such or any other provision, and any such waiver must be in a writing signed by the Party against whom such waiver is to be enforced. No delay or omission by Company or Employee in exercising any right, remedy or power hereunder or existing at law or in equity shall be construed as a waiver thereof, and any such right, remedy or power may be exercised by Company or Employee from time to time and as often as may be deemed expedient or necessary by Company or Employee in its or his sole discretion.

**(d)     Integration**. This Restricted Covenant Agreement and the Employment Agreement constitute the entire agreement between Company and Employee related to the subject matter hereof. There are no oral promises, representations, or warranties affecting it. This Agreement may not be changed orally, but only by an agreement in writing signed by duly authorized officers of Company and the Employee.

**(e)     Severability**.  It is the intention of the Parties that the provisions contained herein shall be enforceable to the fullest extent permissible under applicable law, but that the unenforceability (or modification to conform to such law) of any provision or provisions hereof shall not render unenforceable, or impair, the remainder hereof. If any term or provision of this Restricted Covenant Agreement or the application thereof to any Person or circumstance shall, either in whole or in part, be held invalid or unenforceable by a court of competent jurisdiction, this Restricted Covenant Agreement shall be deemed amended to delete or modify, as necessary, the offending provision or provisions and to alter the bounds thereof in order to render it valid and enforceable; but in such event the affected provisions of this Restricted Covenant Agreement shall be curtailed and restricted only to the extent necessary to bring them within the applicable legal requirements, and the remainder of this Restricted Covenant Agreement shall not be affected.

**(f)     Construction**.  Headings in this Restricted Covenant Agreement are for convenience only and shall not control the meaning of this Restricted Covenant Agreement. Whenever applicable, masculine and neutral pronouns shall equally apply to the feminine genders; the singular shall include the plural and the plural shall include the singular. The Parties have reviewed and understand this Restricted Covenant Agreement, and each has had a full opportunity to negotiate this Restricted Covenant Agreement's terms and to consult with counsel of their own choosing. Therefore, the Parties expressly waive all applicable common law and statutory rules of construction that any provision of this Restricted Covenant Agreement should be construed against the agreement's drafter, and agree that this Restricted Covenant Agreement and all amendments thereto shall be construed as a whole, according to the fair meaning of the language used.

**(g)     Attorneys' Fees and Expenses Recoverable**.  In the event of any litigation between the Parties under this Restricted Covenant Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and litigation or other expenses of any kind that are incurred, including but not limited to those that are incurred prior to litigation.  Wherever provision is made in this Restricted Covenant Agreement or otherwise for "attorneys' fees" or expenses, such terms shall be deemed to include accountants' and attorneys' fees and court costs, whether or not litigation is commenced, including those for appellate proceedings and for paralegals and similar persons, and expert witnesses.  This Section 15(g) shall survive the performance of or termination of this Restricted Covenant Agreement.

**(h)  Governing Law, Venue and Jury Trial Waiver**.  The Parties agree that the laws of the Commonwealth of Kentucky without regard to conflicts of laws principles shall control.  Any litigation between the Parties shall be brought in a state or federal court with jurisdiction in McCracken County, Kentucky WITHOUT THE BENEFIT OF TRIAL BY JURY. The Parties hereby waive any defense of inconvenient forum as to any such court, and agree not to bring any dispute, claim, lawsuit, action, or proceeding arising out of or related to this Agreement in any other court.

**(i)  Counterparts**.  This Restricted Covenant Agreement may be executed simultaneously in two or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same agreement.

**(j)  Delivery by Electronic Means**.  This Restricted Covenant Agreement, to the extent signed and delivered by means of a facsimile machine or by an attachment to email, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of any Party hereto or to any such agreement or instrument, each other Party hereto or thereto shall re-execute original forms thereof and deliver them to all other parties. No Party hereto or to any such agreement or instrument shall raise the use of a facsimile machine or an attachment to an email to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or email as a defense to the formation or enforceability of a contract and each such party forever waives any such defense.

**(k)  Acknowledgments**.  Employee acknowledges receipt of a copy of this Restricted Covenant Agreement and agrees that his obligations hereunder shall be binding upon his heirs and legal representatives. The Parties hereto acknowledge and agree that this Restricted Covenant Agreement contains the entire agreement and understanding concerning the subject matter covered by this Agreement. The Parties agree that this Restricted Covenant Agreement is the product of mutual drafting by both Parties and should not be construed for or against any Party.

**(l)  Recitals Incorporated**.  The recitals set forth on the first page above are incorporated herein as integral terms of this Restricted Covenant Agreement.

**(m)  Confidentiality**. This Restricted Covenant Agreement and the provisions contained herein are to be held in strict confidence with only the necessary agents and representatives who have a need to know being allowed access to this Agreement.

**(n)  Time is of the Essence**. Time is of the essence with respect to each Party's performance as set forth in this Restricted Covenant Agreement.

**(o)  No Presumption.**  No presumption shall operate in favor of or against any party to this Agreement as a result of any responsibility that any party may have had for drafting this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE FOLLOWS]

| Employee: | Hutson, Inc.: |
|---|---|
| /s/ _[signature]_ | By: /s/ _[signature]_ |
| Print Name: Joshua Waggener | Print Name: Bruce L. Hahn |
| Date: [●] 2-27-23 | As its: Vice President |
| Address: 8034 Oak Hurst Dr | Date: [●] 2/27/23 |
| Henderson, KY 42420 | |