**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**Case No. 5:25-cv-00047-BJB-LLK**

HUTSON, INC., ET AL,                                          PLAINTIFFS/ PETITIONERS

v.

WAGGENER, ET AL,

DEFENDANTS/ RESPONDENTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter has been referred to Magistrate Judge Lanny King to hear and determine all

pretrial matters. [DN 7]. Before the Court is the November 3, 2025, Motion to Compel by

Petitioners Hutson, Inc. and Hutson, Inc. of Michigan, Motion [5:26-mc-00001, DN 1], seeking

production of documents and a 30(b)(6) deponent on behalf of non-party Tellus. The Motion was

originally filed in the Southern District of Texas in *Hutson, Inc. et al v. Tellus Equipment*

*Solutions*, *LLC*, Case No. 4:25-mc-02159. The Texas Court then transferred the Motion to this

Court in Case No. 5:26-mc-00001-BJB, and that case was thereafter consolidated into the lead

case *Hutson, Inc. et al v. Waggener*, Case No. 5:25-cv-00047-BJB-LLK, [DN 64].

Tellus Equipment Solutions, LLC has filed a response to the Motion, Response [5:26-mc-

00001, DN 6], and Hutson replied, [5:26-mc-00001, DN 8]. The matter being fully briefed and

ripe for review, the Court **GRANTS** in part and **DENIES** in part the Motion. The Motion is

denied, as premature and without prejudice, as to the 30(b)(6) deponent. Hutson may renew its

Motion, if necessary, after serving a formal request.  In its March 23 Order, [DN 65], the Court

granted the Motion as to document Request Nos. 1, 2, 3, 4, 5, 10, 11, 12, 13, 14, and 19, and the

remaining requests are granted in part, and denied in part, in accord with the below.

1

### 1. <u>Background</u>

This case involves Hutson's claims of misrepresentation; breach of contract, fiduciary duty, and duty to disclose; conversion; unjust enrichment; misappropriation of assets; negligence; and theft against Hutson's former Chief Executive Officer Joshua Waggener, Second Amended Complaint [DN 35]. Hutson seeks damages and injunctive relief in the form of preventing Waggener from working for Tellus or any other business that competes against Hutson, SAC ¶ 69; Motion for Temporary Restraining Order [DN 21]; Motion for Preliminary Injunction [DN 22]. Both Hutson and Tellus are John Deere dealers, and Hutson claims to compete directly with Tellus by selling equipment to or within overlapping regions, including Texas. SAC at ¶¶ 13, 59-61. Hutson also claims that Waggener, by virtue of his employment with Tellus and intimate knowledge of Hutson's confidential and proprietary information, has breached his non-compete contract, Non-Compete [DN 20-3], by competing directly against Huston. *Id.* at ¶¶ 62-64. The Non-Compete prevents Waggener from, *inter alia,* working for a Competing Business for two years following his July 14, 2024, termination as well as from sharing Hutson's proprietary business information (such as Hutson's financial data, customer lists, marketing strategies, and business practices), Non-Compete at 1-3.

To gather evidence in support of its Motions for a TRO and PI, Hutson served Tellus with a subpoena, requesting documents relating to and including Waggener's employment with Tellus, Tellus's knowledge of Waggener's Non-Compete, communications between Waggener and Hutson employees, and the scope of Tellus's sales and marketing efforts. Motion at 3. Counsel for Tellus and Hutson conferred on October 21, 2025, to discuss the scope of the subpoena, production, and deposition topics that Hutson outlined in an email requesting a deposition of Tellus's corporate representative. *Id.* at 4; Response at 1 n.1; [DN 6-5] at 2. Tellus

agreed to produce certain documents. *Id.* It does not appear that counsel for Tellus and Hutson have had any further substantive communications since the October 21 meet-and-confer, despite Hutson's subsequent requests, Motion at 4; [DN 1-8].

Tellus states that it attempted to confer with Hutson in good faith. In a footnote, Tellus concedes that it refused to produce documents that it already agreed to produce, Response at 1 n.1, which led to Hutson filing this Motion. Tellus argues that "this is not a case where Tellus has outright refused to cooperate or produce any documents." Response at 1. Based on Tellus's own admission, *id.* at 1 n.1, the representations of counsel at the February 9, 2026, status conference, and the absence of indicia that Tellus produced any documents prior to the Court's March 23 Order—this might, in fact, be a "case where Tellus has outright refused to cooperate or produce any documents." Response at 1. If Tellus waited for the March 23 Order to produce documents it already agreed to produce, this could indicate a lack of good faith.

Counsel is reminded that the first Rule of Civil Procedure is aimed at the efficient determination of cases. *See* Fed. R. Civ. P. 1. The Rules "should be construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id.* (emphasis added). Parties are expected to confer in good faith to resolve their disputes before burdening the Court, *see* Fed. R. Civ. P. 37, and obstruction or intentional delay are not hallmarks of good faith.

### 2. **Legal Standards**

Hutson's Motion cites authority from the Sixth Circuit, and Tellus argues that Fifth Circuit law applies because the Sothern District of Texas is the "'Compliance Court'" where compliance with the subpoena is required. Response at 7 n.5 (citing *Folkenflik v. Chapwood*

*Capital Inv. Mgmt., LLC*, No. 4:18-CV- 442-ALM-CMC, 2020 WL 9936142, at \*4 (E.D. Tex. 2020)). The Court that issued the subpoena ("Issuing Court") "lacks authority under Rule 45 to address motions to quash unless (i) the Issuing Court is also the Compliance Court, or (ii) the Compliance Court transfers the motion to the Issuing Court." *Folkenflik*, 2020 WL 9936142, at \*4. The Western District of Kentucky is the Issuing Court, [5:26-mc-00001-BJB, DN 1-4], and Transferee Court, Transfer Order [5:26-mc-00001-BJB, DN 14], and will generally apply Sixth Circuit law interpreting the Federal Rules of Civil Procedure (absent any apparent conflict with Fifth Circuit precedent).[1]

District courts have broad discretion over docket control and the discovery process. *See In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (citation omitted). Motions to compel discovery responses are authorized where a party fails to provide proper responses to requests for production of documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). The moving party "bears the initial burden of demonstrating relevance of the information or materials requested." *Veritiv Operating Company v. Phoenix Paper Wickliffe, LLC*, NO. 5:21-CV-00170-BJB-HBB, 2023 WL 2975868, at \*6 (W.D. Ky. April 17, 2023). Once met, the

---

[1] In patent cases prior to Rule 45's 2013 amendment, the law of the Issuing Court appears to have controlled discovery decisions. *See Truswal Systems Corp. v. Hydro-Air Engineering, Inc*., 813 F.2d 1207, 1209 (Fed. Cir. 1987) (Eighth Circuit law applied to motion to quash subpoena issued by Missouri court as an ancillary proceeding to a patent infringement action brought in Florida); *In re Application For Subpoena To Kroll*, 224 F.R.D. 326, 328–29, 59 Fed. R. Serv. 3d 1225 (E.D. N.Y. 2004) (applying Second Circuit law in denying motion to quash). The post-2013 case Tellus cites applied Fifth Circuit law where the Issuing Court and Compliance Court were both located within the Fifth Circuit, but it does not definitely state whether the law of the Issuing Court, Compliance Court, or Transferee Court governs. Because, in this case, Fifth Circuit and Sixth Circuit precedent do not appear to conflict in any substantive way, the Court need not resolve the choice-of-law questions presented.

burden shifts to "the party objecting to the motion to compel to show in what respects the discovery requests are improper." *Polylok, Inc. v. Bear Onsite, LLC*, No. 3:12-CV-00535-DJH-CHL, 2017 WL 1102698, at *3 (W.D. Ky. March 23, 2017) (citing *Kafele v. Javitch, Block, Eisen & Rathborne*, No. 2:03cv00638, 2005 WL 5095186, at *1 (S.D. Ohio April 20, 2005)).

Rule 26(b) of the Federal Rules of Civil Procedure allows a party to obtain any "nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). The discovery "need not be admissible evidence to be discoverable." *Id.* This language is broadly construed to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Veritiv Operating Company*, 2023 WL 2975868, at *6 (internal citations omitted). However, the scope of discovery has limits. "On motion or on its own, the court must limit the frequency or extent of discovery ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Courts "'have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26.'" *Barnett-Morgan v. Inverness Techs., Inc*., No. 3:22-CV-00301-DJH-CHL, 2024 WL 3585138, at *2 (W.D. Ky. July 30, 2024) (quoting *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)). A court "may quash or modify any subpoena that requires disclosure of 'a trade secret or other confidential research, development, or commercial information.'" *Brunswick TKTKonnect, LLC v. Kavanaugh*, No. 3:22-CV-00004-RGJ-CHL, 2025 U.S. Dist. LEXIS 31263, at *19-20 (W.D. Ky. Feb. 20, 2025) (citing Fed. R. Civ. P. 45(d)(3)(B)(i)).

5

### 3. <u>Analysis</u>

In its prior order, the Court initially considered the parties' arguments with respect to documents over which Waggener, a party, might have more convenient access or control:

> Tellus argues in its Response that the burden of discovery requests should be carried by a party, i.e. Waggener, before requiring compliance from non-party Tellus, Response at 10-11. Hutson counters that the documents and information sought are within the exclusive custody and control of Tellus, not Waggener, Reply at 7-8. The Court will not allow parties (and non-parties) to thwart proper discovery requests by pointing the finger as to who has better access or control over shared documents. To the extent that any of Tellus's objections are based on cumulative/duplicative requests that would be more conveniently handled by Waggener, then Waggener and Tellus should prepare to coordinate an expedited production from the most appropriate party.  "The fact that the same information may be available from two different sources does not excuse one of those sources from producing the information." *Brake Parts, Inc. v. Lewis*, No. CIV.A. 09-132-KSF, 2009 WL 1939039, at *4 (E.D. Ky. July 6, 2009) (considering discovery requests as to non-party competitor who argued that defendant-former-employee should first bear the burden of responding).
>
> Furthermore, while Courts in the Sixth and Fifth Circuit agree that non-party status is a factor favoring sensitivity when considering the burdens of production, *see, e.g., Med. Ctr. At Elizabeth Place, LLC v. Premier Health Partners,* 294 F.R.D. 87, 92 (S.D. Ohio 2013); *In re Matter of Subpoenas Served on Collins*, No. A-14-CV-934 LY, 2014 WL 12586370, at *2 (W.D. Tex. Nov. 7, 2014), this factor doesn't always mandate the same degree of sensitivity. This Court has previously considered a non-party subpoena—where the sophisticated non-party was "not disinterested" and was a "party-employer"—and determined that the "need for sensitivity [was] not as compelling" in the context of a "non-party who was integrally involved in the events at issue." *Devilla v. Westlake Vinyls, Inc. et al*, Case No. 5:24-cv-00075-BJB-LLK, [DN 50] at 4 (W.D. Ky. July 1, 2025).

March 23 Order at 3-4.

In addressing the remaining disputes, the Court will not consider Tellus's objections as to documents being "equally and more readily available from a party to the case, namely Waggener." *See, e.g.,* Requests and Objections [DN 1-6] at 4.

Tellus objects to Document Request Nos. 7, 8, 9, 16, 18, 20(D), and 21 on the basis that they are facially "trade secrets or otherwise confidential." Response at 7-10. Beyond providing

its own summary descriptions of these requests, *id.* at 8, and making broad arguments about the confidential nature of the subject documents, Tellus makes no evidence-based attempt to show that the requests seek protected, privileged, or trade-secret documents.

Under Federal Rule of Civil Procedure 26(c)(1)(G), "[t]he court may, for good cause, issue an order to protect a party or person from … undue burden or expense, including ... requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Good cause exists when a party "articulate[s] specific facts showing 'clearly defined and serious injury' resulting from the discovery sought[.]" *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)); *Bobalik v. BJ's Restaurants, Inc*., No. 3:19-CV-0661-RGJ-LLK, 2020 WL 12811572, at *4 (W.D. Ky. Apr. 28, 2020). "The nonmoving party must demonstrate specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Veritiv Operating Co.*, 2023 WL 2975868, at *7. Tellus's general, unsupported arguments largely fail to meet its burden of demonstrating that Hutson's requests are improper.

This should come as no unfair surprise, as Fifth Circuit courts also require that resisting parties show, with specificity, that a request is unduly burdensome or seeks protected trade secrets. "An affidavit or other evidentiary proof is typically necessary to satisfy this burden, but, at a minimum, defendant must provide a detailed explanation as to the nature and extent of the claimed burden." *Navarro Pecan Co., Inc. v. Camilla Pecan Co*., No. 3:13-CV-734-P, 2014 WL 12586170, at *2 (N.D. Tex. Feb. 21, 2014) (internal quotation marks omitted). The party claiming confidentiality "has the burden of establishing confidentiality. There is no absolute privilege for trade secrets and similar confidential information. In order to establish

7

confidentiality, a person must establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." *Exxon Chem. Pats., Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D. Tex. 1990) (internal citation omitted). The affidavit submitted by Tellus's counsel fails to offer any details showing that the requests concern trade secrets or that production would otherwise be unduly burdensome or harmful—other than stating that counsel's firm "does not maintain an office in Kentucky" and "has never maintained an office in Kentucky." [DN 6-5] at 1.

Requiring an "affidavit or other evidentiary proof," *Navarro Pecan Co.,* 2014 WL 12586170, at *2, is of plain importance here. Tellus cannot avail itself of heightened legal protections meant to safeguard against "[d]isclosure to a competitor[,]" yet simultaneously avoid presenting facts—even in an affidavit accompanying its Response—showing that it competes with Hutson. *See* Response at 10 (citing *Duoline Techs., LLC v. Polymer Instrumentation*, No. 7:12-MC-00061, 2012 WL 12871906, at *5 (W.D. Tex. Nov. 26, 2012) ("Disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor.")  Those facts are central to this dispute.

Furthermore, Hutson has consented to potentially sensitive documents being produced subject to a protective order "limiting access to attorneys and retained experts." Reply at 10. And to the extent the requests are overbroad and/or targeted at plainly sensitive information, they will be further limited below on an individual, case-by-case basis. This approach balances Tellus's concerns with disclosure of confidential information (to the extent those concerns have been

properly raised)[2] with Hutson's need for discovery relating to the Non-Compete breach and irreparable harm.

Tellus's other objections repeat, in boilerplate fashion, that Hutson's requests are "overbroad, unduly burdensome, and a plain fishing expedition into Tellus's business and market strategy." *See, e.g.,* [DN 6-4] at 7. The "[u]sage of boilerplate objections to interrogatories and request for production is not permitted under the Federal Rules of Civil Procedure." *Burrell v. Duhon*, No. 5-18-00141 TBR-LLK, 2019 WL 5260481, at *4 (W.D. Ky. Oct. 17, 2019) (citing Fed. R. Civ. P. 33(b)(4)); *Robinson v. Postmaster Gen. of United States*, No. 23-3863, 2025 WL 48235, at *2 (6th Cir. Jan. 8, 2025). Summary objections—unsupported by supplemental argument—may be summarily denied. *See Burrell*, 2019 WL 5260481, at *4 (collecting cases); *Wesley Corp. v. Zoom T.V. Products, LLC*, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) (describing boilerplate objections as "nothing less than a waste of effort and the resources of both the parties and the court") (quotations omitted); *see also Gale v. O'Donohue*, 824 F. App'x 304, 311-312 (6th Cir. 2020) (considering supplemental information in addition to boilerplate objections).

Thus, Tellus's objections to the disputed document requests (Nos. 6, 7, 8, 9, 15, 16, 17, 18, 20, and 21) are overruled to the extent they are based on Waggener's more convenient access to documents and/or boilerplate objections. Arguments and objection on these points will be summarily addressed below (or not at all).

As to Hutson's email-request for a 30(b)(6) deposition of Tellus's corporate representative, the Motion is denied, without prejudice, because Hutson does not appear to have

---

[2] Although Tellus has not articulated specific facts demonstrating that its proprietary information is implicated by the requests, or an attendant risk of harm, the Court has weighed the "necessity" of the relevant information sought by Hutson in its proportionality analysis. *See Duoline Techs., LLC*, 2012 WL 12871906, at *5.

ever served a formal discovery request or subpoena. *See James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 695 (S.D. Fla. 2006). Rule 37 does not authorize a court to compel a deposition based on an informal discovery request. *See id.*

### A.  <u>Request No. 6:</u>

This request seeks all "documents reflecting the role Waggener plays in your competitive strategy, market development, or business plans, including strategies related to geographic areas where marketing, sales, or other operations take place." Requests and Objections [DN 1-6] at 5. Tellus objected to this request as being overbroad and seeking documents about all of its "business and market strategy and is not appropriately limited in scope to the claims and defenses in the Dispute." *Id.* In Reply, Hutson agreed to further limit Request No. 6 to "documents that reflect Waggener's role in any business plans or strategies related to Tellus's geographic area of operations in Texas and the states within Hutson's area of operation for John Deere, Michigan, Kentucky, Indiana, Illinois, and Tennessee" from "August 2025 to the present."

The Request plainly covers, and is tailored to, information relevant to Hutson's claim that Waggener has breached the Non-Compete, *see supra* pg. 2. Finding the so-limited Request to be relevant and proportional to the needs of the case, the Motion is **GRANTED**, subject to these limitations.

### B.  <u>Request No. 7:</u>

This request seeks all "documents reflecting any of your marketing, including online marketing and sales, that includes or covers the states of Michigan, Kentucky, Indiana, Illinois,

and Tennessee in the scope of the marketing." Requests and Objections at 5. Tellus objected to this request as being overbroad and seeking documents about all of its "business and market strategy and is not appropriately limited in scope to the claims and defenses in the Dispute." *Id.* Tellus also objects because some marketing information may be found online, *id.*, and the request is not limited to marketing with which Waggener had involvement, Response at 11. In Reply, Hutson agreed to further limit Request No. 7 "to August 2024 to the present, covering the one year before Waggener's employment and the five months of his employment with Tellus."

The Request plainly covers information relevant to Hutson's claim that Waggener has breached the Non-Compete and suffers irreparable harm. It further seeks information showing that Hutson and Tellus compete for sales in the same region, as well as the extent to which Tellus's marketing and sales have changed since Waggener was employed.

But even as limited by Hutson's Reply, the Request appears disproportionate considering the facts of this case and claims in dispute. The Request reaches all of Tellus's documents reflecting marketing and sales across five states; it is not limited to documents that Waggener has influenced, or tailored to documents that are necessary to show pre- and post-employment changes.

This Request is **DENIED**, without prejudice, and Hutson may renew its Motion, if necessary, following meeting and conferral with Tellus, after the parties make a good-faith effort to reach an amicable compromise, and after modifying the requests consistent with this opinion (should the parties fail to reach a compromise).

### C.  Request No. 8:

This request seeks all "documents relating to Tellus's contact with customers, clients, or potential customers in Michigan, Kentucky, Indiana, Illinois, and Tennessee from January 1, 2023 through the present date." Requests and Objections at 5. Tellus objected to this request as being overbroad and seeking documents about all of its business: "the request for 'all documents' relating to any contact Tellus had with any customer, client, or potential customer in five states for a nearly three-year period imposes an undue burden and cost on Tellus as a non-party to the Dispute." *Id.* at 6. In Reply, Hutson agreed to further limit Request No. 8 "to a list of Tellus's customers in the identified states to August 2024, one year before Waggener's employment, through the present, with the dates of any sales noted thereon." Reply at 14.

The Request covers information relevant to Hutson's claim that Waggener has breached the Non-Compete and Tellus's customer changes during the relevant period. The Request seeks information indicating that Hutson and Tellus compete for customers within Hutson's area of responsibility and that Waggener has brought customers from Hutson to Tellus.

But even as limited by Hutson's Reply, the Request appears disproportionate considering the facts of this case and claims in dispute. The Request reaches all of Tellus's customer relationships across five states and is not limited to customers or potential customers that Waggener has had contact with or customers or that Hutson claims to have lost as a result of Waggener's actions. *See* Response at 12.

This Request is **DENIED**, without prejudice, and Hutson may renew its Motion, if necessary, following meeting and conferral with Tellus, after the parties make a good-faith effort to reach an amicable compromise, and after modifying the requests consistent with this opinion (should the parties fail to reach a compromise).

### D.  <u>Request No. 9:</u>

This request seeks all "documents sufficient to show revenues, sales, or accounts generated by Tellus in Michigan, Kentucky, Indiana, Illinois, and Tennessee from January 1, 2023 through the present date, whether by in person or online sales, including the identity of each customer to whom a sale was made or from whom revenue was generated and the customer's location." Requests and Objections at 6. Tellus objected to this request as being overbroad and seeking documents about all of its business: "the request for 'all documents' relating to any revenues, sales, or accounts generated by Tellus in five states for a nearly three-year period imposes an undue burden and cost on Tellus as a non-party to the Dispute." *Id.* In Reply, Hutson agreed to further limit Request No. 9 to "production of a summary document that contains the requested information" from "January 2024 to the present." Reply at 15.

The Request covers information relevant to Hutson's claim that Waggener has breached the Non-Compete, and it seeks information showing that Hutson and Tellus compete for customers in the same region and that Waggener has brought customers from Hutson to Tellus. But even as limited by Hutson's Reply, the Request appears disproportionate considering the facts of this case and claims in dispute. The Request reaches all documents and customers relating to revenues, sales, and accounts across five states and is not limited to information with which Waggener had any involvement or connection.

This Request is **DENIED**, without prejudice, and Hutson may renew its Motion, if necessary, following meeting and conferral with Tellus, after the parties make a good-faith effort to reach an amicable compromise, and after modifying the requests consistent with this opinion (should the parties fail to reach a compromise).

### E.  Request No. 15

This request seeks all "emails, text messages, or other electronic communications from any email address or cellular phone issued by Tellus to Waggener between Waggener and any current or former customer of Hutson." Requests and Objections at 7. Tellus objected to this request as being overbroad and requiring Tellus to "search for 'all emails, text messages, or other electronic communications' with zero bounds or limitations." *Id.*  "[T]he request is not limited in timeframe or recipients. The request also broadly includes 'any current or former customer of Hutson' irrespective of whether that customer was a customer of Tellus independent to Waggener and/or prior to Waggener's employment at Tellus." *Id.* In Response, Tellus agreed "to search Waggener's Tellus-issued email for the term 'Hutson[.]'" Response at 16. In Reply, Hutson agreed to further limit Request No. 15 to "a search of any Tellus-issued email account to Waggener" for references to Hutson and a production of responsive documents. Reply at 15.

The Request covers information relevant to Hutson's claim that Waggener has breached the Non-Compete. Hutson's agreed limitations address Tellus's concerns with overbreadth and undue burden, as a search of any Tellus-issued email account to Waggener for references to Hutson would be discrete and responsive to relevant information, notwithstanding the unbounded timeframe. Finding the so-limited Request to be relevant and proportional to the needs of the case, the Motion is **GRANTED** in part, subject to these limitations.

### F.  Request No. 16

This request seeks all "emails, text messages, or other electronic communications from any email address or cellular phone issued by Tellus to Waggener between Waggener and any current, former, or potential customer of Tellus in Michigan, Kentucky, Indiana, Illinois, and

14

Tennessee." Requests and Objections at 7. Tellus objected to this request as being overbroad and seeking documents about all of its "business communications with its customers and is not appropriately limited in scope to the claims and defenses in the Dispute. Moreover, the request for 'all emails, text messages, or other electronic communications' with any customer in five states for an unspecified time period imposes an undue burden." *Id.* at 8.

The Request covers information relevant to Hutson's claim that Waggener has breached the Non-Compete. The Request is limited to "any email address or cellular phone issued by Tellus to Waggener[.]" *Id.* at 8. Tellus argues that the Request "has no tie to Hutson's customers[,]" Response at 16, but the Request is clearly limited to customers in Hutson's area of operation with whom Waggener has had contact.  Furthermore, Hutson notes that "Waggener has only been employed by Tellus since August 2025, so the request covers only a five-month [now ~8-month] time span." Reply at 15. This time span is not overbroad, and if Tellus issued Waggener an email address of cellphone prior to his employment with Tellus (e.g., while he was still employed with Hutson), then any responsive communications would be highly relevant to the issues in dispute, and the larger time span would be wholly proportional.

Finding the Request to be relevant and proportional to the needs of the case, the Motion is **GRANTED** as to this Request.


### G.  Request No. 17

This request seeks all "emails, text messages, or other electronic communications from any email address or cellular phone issued by Tellus to Waggener between Waggener and any current or former employee of Hutson." Requests and Objections at 8. Tellus objected on the same grounds as it did to Request Nos. 15 and 16, and because it doesn't know all of Hutson's

15

current/former employees, Response at 16. In Reply, Hutson agreed to further limit Request No. 17 to "a search of any Tellus-issued email account to Waggener" for references to Hutson and a production of responsive documents. Reply at 15.

Finding the so-limited Request to be relevant and proportional to the needs of the case, and in accord with the reasons articulated in Request Nos. 15 and 16, the Motion is **GRANTED**, subject to these limitations.

### H.  Request No. 18:

This request seeks "sufficient to show all counties in Texas from which Tellus generated revenue, sales, or accounts from January 1, 2023 through the present date." Requests and Objections at 8. Tellus objected to this request as being overbroad and seeking documents about all of its business in Texas: "the request for 'all documents' showing all counties in Texas from which Tellus generated revenue, sales, or accounts for a nearly three-year period imposes an undue burden[.]" *Id.* In Reply, Hutson agreed "to limit its request to a summary document listing the counties in Texas from which Tellus generates revenue or sales" and to "the time period from January 2024 to the present." Reply at 15.

The Request covers information relevant to Hutson's claim that Waggener has breached the Non-Compete, and it seeks information showing that Hutson and Tellus compete for customers in the same region. The temporal scope is broad enough to encompass sales and revenue changes, within the limited geographic scope, during the approximate two-year, relevant period.

Finding the so-limited Request to be relevant and proportional to the needs of the case, the Motion is **GRANTED**, subject to these limitations.

16

## I.   Request No. 20:

This request seeks all "entries on any Tellus calendar, diary, scheduling program, planner, or similar system during the time of Waggener's employment that in any way reference" Hutson or Tellus's marketing or sales within Hutson's geographic area of operation. Requests and Objections at 9. Tellus objected to this request as being overbroad and seeking documents about all of its "'sales, marketing, or other endeavors directed toward potential customers' in five states for an unspecified time period. The request for any documents that 'in any way reference' Hutson," or its current/former employees "is also overbroad and a fishing expedition. The request also broadly includes 'Hutson or its customers' irrespective of whether that customer was a customer of Tellus independent to Waggener and/or prior to Waggener's employment at Tellus." *Id.* In Response, Tellus agreed "to search Waggener's Tellus-issued email for the term 'Hutson[.]'" Response at 17. In Reply, Hutson agreed to limit its request to "a search of any Tellus-issued calendaring or scheduling program for references to" Hutson. Reply at 17.

The Request covers information relevant to Hutson's claim that Waggener has breached the Non-Compete, and it seeks information showing that Hutson and Tellus compete for customers in the same region. Its temporal scope is limited to Waggener's employment, which now spans approximately eight months. Tellus agreed to a similar search of emails, and Hutson's proposed search is broader only in that it would include calendaring or scheduling programs in addition to emails.

Finding the so-limited Request to be relevant and proportional to the needs of the case, the Motion is **GRANTED**, subject to these limitations.

**J.    Request No. 21:**

This request seeks a "copy of your current John Deere Dealer Agreement(s)." Requests and Objections at 9. Apart from boilerplate objections, Tellus argues only "that the John Deere Dealer Agreement is wholly irrelevant to the Litigation." Response at 17. The request appears relevant. This litigation involves Waggener's breach of his Non-Compete brought by his former employer, Hutson—a John Deere dealer. Tellus—Waggener's current employer—is also a John Deere dealer. Tellus offers no specific argument or objection for why or how the request is irrelevant. In Reply, Hutson agrees "to limit its request to the section(s) of any relevant Dealer Agreement that identify Tellus's areas of operation[,]" Reply at 17, and this limitation appears reasonable.

Finding the so-limited Request to be relevant and proportional to the needs of the case, the Motion is **GRANTED** in part, subject to these limitations.

## CONCLUSION AND ORDER

In accord with the foregoing, the Court **GRANTS** in part and **DENIES** in part the Motion to Compel. The Motion is **DENIED**, without prejudice, as to the 30(b)(6) deponent. Hutson may renew its request after serving a formal request and after the parties make a good-faith effort to reach an amicable compromise through meeting and conferral.

In its March 23 Order, the Court granted the Motion as to document Request Nos. 1, 2, 3, 4, 5, 10, 11, 12, 13, 14, and 19. The Motion to Compel Request Nos., 6, 7, 15, 17, 18, 20, and 21 is **GRANTED** in part, in accord with limitations described in this order. The Motion is **GRANTED** as to Request No. 16. The Motion is **DENIED**, without prejudice, as to Request Nos. 7, 8, and 9.

18

To the extent that Tellus objected to a request on grounds of its seeking proprietary, confidential, and/or trade secret information, Hutson consented to such documents being produced subject to a protective order limiting access to attorneys and retained experts. These documents may be produced with an attorneys'-eyes-only/retained-expert-only designation and may not be viewed by, or shared with, clients or non-attorneys/retained experts. The parties shall meet and confer as to any further confidentiality terms.

The Court previously ordered Waggener and Tellus to prepare "to coordinate an expedited production from the most appropriate party." March 23 Order at 3. Unless Waggener has agreed to shoulder the burden, Tellus must produce the documents or information required by this order.

**The parties shall meet and confer within 7 days from the date of this Order, including with regard to any modified requests. Tellus shall respond within 14 days of the date of this Order.**

**Tellus shall produce responsive documents to Request Nos. 6, 15, 16 17, 18, 20, and 21 within 7 days. Objections to this order are due within 7 days.** "[T]he Court exercises its **inherent authority to shorten this time period to 7 days given the expedited nature of the discovery and the impending [April 13] date for the preliminary injunction hearing.**" *See* March 23 Order at 2-3 (collecting cases).

March 25, 2026

Lanny King, Magistrate Judge
United States District Court